UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X

EDWIN MORALES, on behalf of himself and all others
similarly situated,

                                Plaintiff,

         - against -

DANBURY PHARMA, LLC and
BALASUBRAMANIAM J. HARID, individually,

                         Defendants.

:
:
: Case No. 16 Civ. 634 (JS)(SIL)
:
:
:
:
:
:
:
:

------------------------------------------------------------------- X

**DECLARATION OF GARRETT KASKE
IN SUPPORT OF PLAINTIFF'S MOTION FOR
<u>APPROVAL OF THE SETTLEMENT AND ATTORNEYS' FEES & COSTS</u>**

I, Garrett Kaske, declare as follows:

       1.       I am an associate at the law firm of Shulman Kessler LLP, counsel for Plaintiff.

       2.       I am one of the attorneys responsible for the prosecution of this matter against Defendants.

       3.       I make these statements based on personal knowledge and would so testify if called as a witness.

**<u>My Background and Experience</u>**

       1.       I received a Juris Doctor degree from the City University of New York School of Law in 2013.  I was admitted to the bar of the State of New York in May 2014 and subsequently to the United States District Courts for the Southern and Eastern Districts of New York.  I am a member of good standing in each of these bars.

       2.       Since April 1, 2014, I have been an associate at Shulman Kessler LLP ("SK"), which concentrates in the representation of employees in collective and class actions involving

wage and hour disputes, as well as in discrimination and harassment cases and contract and severance negotiations.  Since I was admitted to the New York State bar in May 2014, I have represented employees in and participated in the prosecution of a variety of employment-related disputes involving individual claims of discrimination and harassment, and individual, collective, and class claims of wage and hour violations.

3.      Before joining SK, I held several positions involving workers' rights and wage and hour law.  From November 2014 through March 2015, I clerked for the employee-side labor and employment firm Gladstein, Reif & Meginniss LLP.  During law school, I represented employees, including in a wage and hour case filed in the Eastern District of New York, through City University of New York School of Law's Community Economic Development Clinic.  I also competed in the Labor and Employment Law Section of the American Bar Association's annual trial advocacy competition.  During my summers while in law school, I worked on wage and hour policy at the Progressive States Network and on the barriers to employment facing individuals with criminal convictions at the Community Service Society.  I was also a law clerk for the employee-rights law firm Outten & Golden, LLP ("O&G") from December 2012 through April 2013.

4.      Prior to law school, from November 2007 through August 2010, I was employed at O&G as a litigation paralegal, working primarily on class and collective actions involving wage and hour violations.  For instance, throughout the spring and early summer of 2014, I supervised teams of paralegals reviewing deposition testimony, interviewing class members, compiling discovery responses, and reviewing time and payroll data in preparation of summary judgement motions and trial.  *See Torres v. Gristede's Operating Corp.*, No. 04 CIV. 3316, 2012

WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012) (awarding O&G $164,175 for my 1,313.4 billable hours, at $125 an hour, as a paralegal), *aff'd*, 519 F. App'x. 1 (2d Cir. 2013) (summary order).

5.    I engage in the employment-law bar as a member of the Labor and Employment Committee of the National Lawyers Guild – New York City Chapter ("L&EC"), National Employment Lawyers Association ("NELA"), and NELA/NY, and as a presenter at CLEs.

6.    I have been a co-chair of the L&EC since the spring of 2014 and a member since approximately December 2011.  As part of my contributions to the L&EC, I have organized continuing legal education seminars on labor and employment law, including:

- On Offense: Tactics for Worker Justice (Nov. 13, 2012) – A seminar on identifying wage and hour violations and litigating wage and hour cases during worker-organizing drives.

- Food Fight:  Lawyering and Organizing in the Fast Food Showdown (Oct. 31, 2013) – A seminar regarding the fast-food workers movement, including the common wage and hour violations in the fast-food and whether franchisors are jointly and severally liable for wage and hour violations of their franchisees.

- Bankrupting Democracy:  Constitutional Rights, Civil Rights, and Labor Rights under Siege in Detroit (Jan. 23, 2014) – A seminar looking at Detroit's municipal bankruptcy, the emergency manager, and pending litigation impacting Detroit workers' pensions and voting rights.

- Schooling the University:  Winning Workplace Justice for Campus Workers (Apr. 10, 2015) – A seminar on the worker-organizing campaigns on college campuses and the wage and hour litigation surrounding interns.

- First Experiences with the New NLRB Election Rules (Dec. 2015) – A seminar including an overview of the changed to the union election rules, a statistical analysis of the impact of the changes, and reflections on personal experiences navigating the new rules.

7.    As a member of NELA, I led the New York contingent at NELA's Lobby Day in the spring of 2015, in advance of NELA's 2015 convention in Washington, D.C.

8.    On September 18, 2015, I spoke on labor and employment issues at the Labor Employment Committee of the Suffolk County Bar Association's Law in the Workplace

Conference.  Specifically, I was on a panel with a supervising attorney from the National Labor Relations Board and a management-side attorney.  I spoke from the employee perspective on employee handbooks that run afoul of the National Labor Relations Act.  Part of my discussion and the materials I submitted focused on arbitration clauses used to quell wage and hour class and collective actions.

9.     On March 11, 2016, I spoke on a panel entitled "Strategies & Consideration for Arbitration of Employment Disputes" at the New Your City Bar Association's Employment Law Institute.  My presentation and the materials I prepared for the CLE focused on strategies for plaintiffs' attorneys facing compelled arbitration of employment matters, including class and collective actions.

10.     On June 9, 2017, I presented on an ethics panel at the NYU 70th Annual Conference on Labor.  My discussion focused on ethically communicating with low-wage workers in employment class actions.

11.     In November 2016 and 2017, I volunteered as a "juror" for the ABA LES's annual trial advocacy competition held at the Southern District of New York courthouse.  As a juror, I observed a mock employment discrimination trial and evaluated and critiqued the law-student competitors.

<u>**Shulman Kessler LLP's Experience**</u>

***Troy L. Kessler***

12.     Mr. Kessler received a Juris Doctor degree from Loyola University of Chicago – School of Law, in 1996.  He was admitted to the bar of the State of New York in 1997 and subsequently to the United States District Courts for the Southern and Eastern Districts of New

York, as well as the United States Court of Appeals for the Second Circuit. He is a member of good standing of each of these bars.

13.    From September 1996 until December 2002, he was associated with Capetola & Doddato, Esqs., LLP, in Williston Park, New York, where he handled general civil litigation matters and also represented individuals in a variety of employment-related disputes including discrimination and harassment cases. In January 2003, he co-founded the firm of Misiano Shulman Capetola & Kessler, LLP, where he represented employees in a variety of employment-related disputes including discrimination and harassment cases as well as collective and class actions involving wage and hour disputes. In March 2010, Misiano Shulman Capetola & Kessler LLP, disbanded and he founded Shulman Kessler LLP, which concentrates in the representation of employees in collective and class actions involving wage and hour disputes, as well as in discrimination and harassment cases and contract and severance negotiations. Over the last seven years he has participated in and supervised the prosecution of more than 200 wage and hour cases, including both individual cases as well as collective and class action cases

14.    Mr. Kessler is a member of the Executive Board for the Federal Bar Association, Eastern District of New York Chapter

15.    Mr. Kessler is a member of NELA and NELA/NY. Mr. Kessler presently serves as a Board Member at NELA/NY. Mr. Kessler also serves on NELA/NY's Conference Committee, and in that capacity he is one of the members responsible for organizing the semi-annual continuing legal education seminars. In his most recent speaking engagement at NELA/NY, Mr. Kessler moderated a panel which discussed post-discovery certification and decertification issues in wage and hour litigation.

16.     Mr. Kessler is also a member of the Advisory Board of the Center for Labor and Employment Law at New York University School of Law.

17.     Mr. Kessler is the past co-chair of the Suffolk County Bar Association's Labor & Employment Committee.  Mr. Kessler has spoken frequently on wage and hour issues before bar associations in both Nassau and Suffolk Counties.  The topics have included: the workplace rights of undocumented workers; recent developments in wage and hour litigation; and the white-collar exemptions to the FLSA.

18.     Mr. Kessler's most recent speaking engagements have included the following:

- March 24, 2016, he presented at the FLSA case law update at the U.S. Department of Labor, Office of the Solicitor Training Program.  As part of the program, they discussed "hot topics" in FLSA litigation including issues concerning joint employment and independent contractors.

- April 5, 2016, he presented at the Federal Bar Association, Eastern District of New York Chapter's "Fair Labor Standards Act Update," on the topic of settlement issues in wage and hour litigation in the wake of the Second Circuit's decision in *Cheeks v. Freeport Pancake House*.

- June 3, 2016, he presented at the NYU 69th Annual Conference on Labor, on a panel entitled "Ethically Communicating with Putative Class and Collective Action Members."  As part of the presentation, he discussed the ethical rules, and judicial interpretation regarding the manner in which counsel can communicate with putative class and collective action members.

- June 15, 2016, he was a trainer at "FLSA Mediation Training" which was conducted in conjunction with the Eastern District of New York, the Federal Bar Association and Cornell University's ILR Labor and Employment Program.  As part of the all-day training session, he presented on the topic of representing workers covered by the Hospitality Wage Order, and on the topic of Top 10 FLSA Takeaways.

- On June 23, 2016, he presented at the NELA conference in Los Angeles, California, on the topic of issue spotting wage and hour violations.  As part of the presentation, he discussed wage and hour issues affecting the hospitality industry.

- On September 28, 2016, he was a trainer at "FLSA Mediation Training" which was conducted in conjunction with the Eastern District of New York, the Federal Bar Association. As part of the all-day training session, he presented on the topic of representing workers covered by the Hospitality Wage Order, and Calculating Damages in Wage and Hour Litigation.

- On November 10, 2016, he presented at the American Bar Association's Labor and Employment Conference in Chicago, Illinois, on the topic of pursuing and negotiating class action settlements.

- On March 8, 2017, he spoke at the Twentieth Annual NYU Employment Law Workshop for Federal Judges, held at New York University School of Law. The Workshop is organized in conjunction with the Federal Judicial Center. His panel addressed employment arbitrations.

- On September 28, 2017, he was a panelist at the United States Department of Labor's in-house training. He presented on the "Strategies for Asserting Individual Liability for FLSA Violations."

- On October 11, 2017, he was a trainer at "Mediation Advocacy Training" which was conducted in conjunction with the Eastern District of New York, the Federal Bar Association and Cornell University's ILR Labor and Employment Program. As part of the training program, he provided the case law update.

19.    For the past two years, Mr. Kessler has been a contributing author for the American Bar Association's FLSA Midwinter Report. The Midwinter Report serves as the annual supplement to the Ellen C. Kearns et al. eds., FAIR LABOR STANDARDS ACT (2d. ed. 2010).

***Shulman Kessler LLP***

20.    Examples of recent and current cases in which I have been primarily or substantially responsible for the prosecution of the plaintiffs' claims, include the following: *Robinson v. Big City Yonkers, Inc.*, Index No. 600159/2016, 2017 NY Slip Op 30177(U), 2017 WL 440568 (Sup. Ct. Jan. 17, 2017) (granting class and conditional collective certification of over 1,700 drivers classified as independent contractors), (Sup. Ct. Nov. 22, 2017) (class action settlement preliminarily approved); *Brackley v. Red Robin Gourmet Burgers, Inc.*, No. 16 Civ.

288 (E.D.N.Y. June 6, 2017) (class action settlement approved on behalf of over 2,000 servers employed in New York); *Cruz v. Burger Brothers Rest. Group, Inc.*, No. 14 Civ. 3186 (E.D.N.Y. Mar. 28, 2017) (class action settlement approved on behalf over 275 assistant store managers employed at over 45 fast food restaurants in New York); *Castagna v. Hampton Creek, Inc.*, No. 16 Civ. 760 (E.D.N.Y Jan. 23, 2017) (approving FLSA settlement of purported independent contractors); *Davis v. IMG Worldwide, LLC*, No. 15 Civ. 2157 (S.D.N.Y. Nov. 16, 2016) (class action settlement approved on behalf of approximately 85 Fashion Week workers); *Batres v. Valente Landscaping, Inc.*, No. 14 Civ. 1434 (E.D.N.Y. Sept. 19, 2016) (approving collective action settlement of seven landscapers); *Klein v. Weatherproofing Tech., Inc.*, No. 15 Civ. 4443 (E.D.N.Y. Jan. 29, 2016) (conditionally certifying collective of over 200 roofing technicians employed throughout New York State); *Garcia v. Sidco Food Distrib. Corp.*, No. 14 Civ. 9449 (S.D.N.Y. Dec. 16, 2015) (approving wage-and-hour settlement of two collectors at food distributor).

21.     Additionally, the following are a few examples of cases in which SK was recently or is currently involved:  *Oakley v. Servisair*, No. 13 Civ. 4191 (E.D.N.Y. May 25, 2017) (conditionally certifying nationwide collective of fuelers employed at airports throughout the United States); *Rodriguez v. Joseph Eletto Transfer, Inc.*, No. 5431/2016, 2016 WL 7365683 (Sup. Ct. Dec. 15, 2016) (class action settlement approved on behalf of approximately 80 delivery drivers); *Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891, 2016 WL 2839797 (E.D.N.Y. May 12, 2016) (class action settlement approved on behalf of approximately 250 marketing representatives); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655 (E.D.N.Y. July 30, 2015) (class action settlement approved on behalf of approximately 2,500 assistant branch managers); *Sukhnandan v. Royal Health Care of Long Island*, No. 12 Civ. 4216,

2014 WL 3778173 (S.D.N.Y. July 31, 2014) (matter on behalf of more than 400 marketing representatives approved as a class and collective action settlement); *Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143 (E.D.N.Y. Feb. 3, 2009) (matter on behalf of grocery store workers conditionally certified).

22.    In *Garcia v. Pancho Villa's of Huntington Village*, the Hon. E. Thomas Boyle, U.S.M.J., certified the matter as a class action stating that "the Court takes notice that Plaintiffs' counsel, Shulman Kessler, are experienced labor and employment litigators, who have successfully represented employees in numerous collective and class action lawsuits."  281 F.R.D. 100, 107 (E.D.N.Y. 2011).

23.    In *Morris v. Affinity Health Plan*, the Hon. Andrew L. Carter, Jr., U.S.D.J., certified a class action and approved a class action settlement stating that Shulman Kessler LLP and Outten & Golden, LLP, "have substantial experience prosecuting and settling wage and hour actions, are well-versed in wage and hour and class action law, have been class or lead counsel in numerous wage and hour class and collective actions."  859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012).  Moreover, Judge Carter determined that Shulman Kessler LLP "are experienced employment lawyers with good reputations among the employment law bar . . . [and] substantial experience prosecuting large-scale wage and hour class and collective actions."  *Id*. at 622.

24.    In *Puglisi v. TD Bank*, the Hon. Gary R. Brown, U.S.M.J., approved the class action settlement, indicating that the work by the plaintiffs' counsel – including Shulman Kessler LLP and Outten & Golden, LLP – was "excellent" and noting "the high level of service that was provided to the class."  *Puglisi v. TD Bank*, No. 13 Civ. 637 (E.D.N.Y. July 30, 2015), Hr'g Tr. at 10-12.

25.     In *Rodriguez v. Joseph Eletto Transfer, Inc.*, the Hon. Jeffery S. Brown, J.S.C.,

approved the class settlement, stating that plaintiffs' counsel – including Shulman Kessler LLP –

"has established their significant experience in prosecuting employment class actions and their

work performed in in representing the interests of class members." *Rodriguez*, 2016 WL

7365683, at *2.

26.     As outlined in *Rodriguez*, *Bijoux*, *Puglisi*, *Garcia*, *Morris* and *Sukhnandan*, courts

have repeatedly found that SK has served as adequate counsel in wage-and-hour collective and

class actions. *See Rodriguez*, 2016 WL 7365683, at *2; *Bijoux*, 2016 WL 2839797, at *1;

*Puglisi*, 2015 WL 4608655, at *1; *Garcia*, 2012 WL 5305694, at *7; *Morris*, 859 F. Supp. 2d at

616, 622; *Sukhnandan*, 2014 WL 3778173, at *8 ("The work [Shulman Kessler LLP] has

performed in litigating and settling the [class action] demonstrates their commitment to the

class.").

## Procedural and Factual Background

27.     On February 5, 2016, Edwin Morales, on behalf of himself and all others similarly

situated, filed the instant class and collective action against Danbury Pharma, LLC and

Balasubramaniam J. Harid, an individual (collectively, "Defendants"). ECF No. 1, (Compl.).

28.     Plaintiff alleged violations of the Employee Retirement and Income Security Act

of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1101, et seq., 1132, and 1145, New York Labor

Law ("NYLL" or "N.Y. Lab. Law"), N.Y. Lab. Law § 190, et seq. , the Worker Adjustment and

Retraining Notification Act ("WARN Act"), 29 U.S.C. § 2101, et seq.,  New York Worker

Adjustment and Retraining Notification Act ("NY WARN Act"), N.Y. Lab. Law § 860, et seq.,

the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. § 201, *et seq.*  ECF

No. 1. (Compl.) ¶ 1.

29.     With regards to the ERISA and NYLL claims, Plaintiff alleged that on or about February 1, 2015 through March 31, 2015, Defendants did not provide him with group healthcare coverage.  During this time, however, Defendants continued to withhold wages from Plaintiff as contributions to the healthcare plan.  Throughout this period, unbeknownst to him, visits to their doctors, prescriptions, trips to the emergency room, and other expenses were not covered.  *Id.* ¶¶ 54-64.

30.     With regards to the WARN and NY WARN Act claims ("the WARN claims"), Plaintiff alleged that on or about January 15, 2016, Defendants terminated Plaintiff and other former employees without advance written notice, and within 30 days of that date, Defendants terminated over 50 other full-time employees without advance notice.  *Id.* ¶¶ 88-89.

31.     With regards to the FLSA and NYLL claims, Plaintiff alleged that he consistently worked over 50 hours per week without receiving overtime pay at one and one-half his regular rate.  He alleged that to avoid paying him overtime premiums for the hours he worked in excess of 40 per workweek, Defendants classified him as exempt from the overtime provisions of the FLSA and the NYLL.  Although Plaintiff held the title of warehouse manager, he was entitled to overtime because, *inter alia*, he could not hire or fire employees and he spent over 90 percent of his time performing non-managerial work.  *Id.* ¶¶ 88-90.

32.     Plaintiff also alleges that Defendants provided him with inaccurate wage statements (paystubs) each pay period.  *Id.* ¶¶ 88-90.

33.     On March 31, 2016, the parties met and conferred about an early resolution and the nature of the claims.  Defendants counsel advised that the WARN claims were not at issue because less than 25 people were terminated, laid off, and furloughed during the relevant period.

34.    In April 2016, the parties agreed to engage in targeted discovery to facilitate settlement negotiations.  As such the parties entered into a confidentiality agreement and extended the time to for Defendants to answer.

35.    Thereafter, in May 2016, Defendants produced payroll records for Plaintiff.

36.    On or about June 6, 2016, Plaintiff emailed Defendants a damages model.

37.    Shortly thereafter, the parties conferred on settlement and other case management issues.  The parties had several additional email exchanges and phone calls on settlement between June and August 2016.

38.    On August 29, 2016, Defendants answered the complaint and asserted a counterclaim against Plaintiff for contribution and indemnification (the "Counterclaim").  ECF No. 14 (Ans.) ¶¶ 159-60.

39.    On September 7, 2016, the parties appeared before the Honorable Judge Sandra J. Feuerestein, U.S.D.J. at the initial conference.  At the conference the parties advised the Court as to the nature of the claims, settlement possibilities, and the damages at issue.  Plaintiff also advised that court that the WARN claims may need to be withdrawn, as would Plaintiff's class action claims, because Defendants did not terminate, layoff, and furlough enough workers during the relevant period.  Your Honor ordered the parties to engage in limited discovery, including two depositions, and return for another court conference on November 7, 2016.

40.    On September 7, 2016, before and after the court conference, the parties again discussed settlement.

41.    On September 12, 2016, Plaintiff made their Rule 26 disclosures and wrote Defendants as to the viability of their Counterclaim, Court-ordered discovery, and settlement.

Attached as a revised damages model based on the parties' discussions with the Judge Feuerstein at the initial conference.

42.    After some additional exchanges, the parties reached a settlement in principal on November 7, 2016 and advised Judge Feuerstein of the settlement on the phone conference held that day.

43.    From November 7, 2016, through December 2016, the parties on drafted, negotiated, and executed the settlement agreement for the First Settlement.

44.    Plaintiff submitted the First Settlement for Court-approval on December 23, 2016. *See* ECF No. 22-24.

45.    Judge Feuerstein, however, denied Plaintiff's motion because the scope of the release in Section 4.1(d) of the agreement was overbroad. *See* ECF No. 25 (Ord.) at 2.

46.    Thereafter, Plaintiff's counsel proposed an amendment to the First Settlement to conform to Judge Feuerstein's Order. Defendants, however, did not agree to the proposal and the First Settlement ultimately collapsed and Plaintiff moved to reopen the case. *See* ECF No 29 (Mot. to Reopen); Ord., Mar. 17, 2017.

47.    But, Defendants' counsel withdrew as Defendants attorneys, effective on March 23, 2017. *See* ECF No. 32 (Minute Entry). Defendants did not retain an attorney and Defendant Harid elected to proceed *pro se*. *See* ECF No. 33 (Minute Entry).

48.    From September through December 2017, Defendant Harid and Plaintiff's counsel engaged in arms-length negotiations, resulting in the instant settlement of $4,070. Throughout this period, Plaintiff's counsel and Defendant Harid had numerous phone calls and in-person discussions about settlement and Defendants' ability to pay.

49.    A fully executed copy of the Agreement is attached as **Exhibit A.**

## The Agreement

50.     Settlement Agreement provides for Plaintiff to be paid $4,070 over five installments lasting 600 days.  *See* Ex. 1 (Settlement Agreement) ¶ 2.1.

51.     As consideration, Plaintiff will release Defendants of all claims raised in the Complaint – Plaintiff will not release any other potential claims.  *Id* ¶ 4.1

52.     As additional consideration, Defendants will release Plaintiff of claims related to their Counterclaim.  *Id* ¶ 4.2.

53.     Plaintiff's counsel seeks attorneys' fees amounting to one-third of the Settlement Amounts after costs ($1,356.67).  *Id* ¶ 2.2(a).

54.     The Parties have also agreed to mutual non-disparagement with specific carveouts. *Id*. ¶ 5.1.

55.     Plaintiff and Defendants have executed the Agreement.

56.     Counsel for Plaintiff and Defendant Harid have executed a Stipulation of Dismissal.

## Plaintiff's Estimates of Possible Recovery

57.     In lieu of continued, burdensome discovery and motion practice, the parties engaged in settlement discussions.

58.     Throughout the settlement negotiations, I ran numerous spreadsheets to estimate Plaintiff's ranges of possible recovery.  I estimated these ranges using the following documents and information: (a) Plaintiff's payroll documents; (b) Plaintiff's medical bills; (c) my conversations with Plaintiff regarding his duties and hours worked; and (d) my conversations with a witness who was former Plaintiff's co-worker.

59.     Attached as **Exhibit B** is a copy of Plaintiff's damages estimate of his best-case recovery, which incorporates the following assumptions:

14

- Plaintiff would be able to prove that Defendants did not have a good-faith basis for classifying Plaintiff as exempt, thereby requiring the payment of FLSA liquidated damages on his overtime claim.

- Plaintiff would be able to prove that Defendants did not have a good-faith basis to deduct money for health insurance from Plaintiff after the plan had allegedly lapses, thereby requiring the payment of NYLL liquidated damages on his deductions claim.

- Plaintiff would be able to prove that the Plaintiff's regular rate should be determined by dividing his weekly wage by 40 hours per week, as opposed to dividing by the total number of hours actually worked.

- Plaintiff worked 10 hours of unpaid overtime each week in which he did not take a day off.

- Plaintiff would be entitled to recover unpaid overtime at the rate of 1.5 times his regular rate, as opposed to 0.5 times his regular rate.

- Plaintiff was subjected to a wage statement violation each workweek.

- Plaintiff cannot recover any damages for his WARN claims.

60.    Attached as **Exhibit C** is a copy of Plaintiff's more modest estimate of potential recovery, which still incorporates the following assumptions:

- Plaintiff would be able to prove that Defendants did not have a good-faith basis for classifying Plaintiff as exempt, thereby requiring the payment of FLSA liquidated damages on his overtime claim.

- Plaintiff would be able to prove that Defendants did not have a good-faith basis to deduct money for health insurance from Plaintiff after the plan had allegedly lapses, thereby requiring the payment of NYLL liquidated damages on his deductions claim.

- Plaintiff's regular rate should be determined by dividing his weekly wage by 50 hours, which is the number of hours that he was assumed to have worked.

- Plaintiff worked 10 hours of unpaid overtime each week in which he did not take a day off.

- Plaintiff would be entitled to recover unpaid overtime at the rate of 0.5 times his regular rate, which assumes that he was already compensated at his regular rate for all overtime hours.

- Plaintiff was subjected to a wage statement violation each workweek.

- Plaintiff cannot recover any damages for his WARN claims.

61.    By comparing the potential recovery amounts on **Exhibit B** and **Exhibit C** with the settlement, the percentages of recovery based upon Plaintiff's estimates are approximately 7% of Plaintiff's best-case recovery and approximately 16% of Plaintiffs' modest estimate of recovery.

62.    Defendants deny that Plaintiff is owed any unpaid overtime to the extent that Plaintiff could prove some liability.  Defendants' former counsel, in particular, sought to refute the reasonableness of the hours upon which Plaintiff based his calculations.  To support this position, Defendants' former counsel pointed to his paystubs, which indicate that he was paid for 45 hours each workweek.  They also believe that he was exempt given his position as a warehouse manager and the extent of his supervisory responsibilities.  Therefore, Defendants' estimates as to Plaintiff's best-case recovery and modest estimate of recovery would be lower, to the extent that Plaintiff could recover anything.

63.    Defendants also deny any liability with regards to Plaintiff's medical expenses and wage deduction claims under ERISA and NYLL.

64.    Lastly, Defendants asserted the counterclaim, which could arguably offset Plaintiff's damages in this case.  Although Plaintiff denies the allegations underlying the counterclaim and the legal theory behind it, any such recovery on this counterclaim would offset Plaintiff's recovery.

## Risks of Continued Litigation

65.    The Agreement reflects a reasonable compromise of this matter.  According to Plaintiff's estimates, the Settlement Amounts represent approximately 7% of Plaintiff's best-case recovery and approximately 16% of Plaintiff's recovery under more modest assumptions.  The

16

percentage of recovery is appropriate when weighed against unresolved factual issues concerning

the number of hours worked by Plaintiff which were not properly compensated by

Defendants.  This is especially true because these factual issues, in part, would potentially be

resolved in a manner which supports Defendants' contention that Plaintiff did not work as many

overtime hours as he alleged in the Complaint.  As such, it is possible that if litigation continued

and the trial proceeded, these factual issues would be resolved in favor of the Defendants thereby

making it Plaintiff's burden of proof to demonstrate all hours worked, as opposed to permitting

reasonable approximations of those hours worked.

66.     Specifically, Plaintiff does not have access to precise records to demonstrate the

hours worked because he was not required to punch in and out during the relevant period.  As

such, Defendants would attempt to refute Plaintiff's estimated hours worked by using other

witnesses' testimony.

67.     Moreover, there are serious concerns about collectability in this case.  At the time

of Plaintiff's first motion for settlement approval in December 2016, Defendant Danbury Pharma

had been having financial troubles for at least a year, which led to Plaintiff's termination.

Subsequently, Defendant Danbury Pharma closed its operations.  Then, Defendants' former

counsel were relieved as attorneys for Defendants.  Defendant Harid later advised the Court that

Defendants would not be replacing their attorneys because they could not afford it.  Moreover,

this lawsuit is but one seeking an unpaid debt from Defendants.  Plaintiff's counsel is aware of

and has reviewed numerous lawsuits and judgments filed against Defendants.  As a result,

Plaintiff's counsel believes that continued litigation could ultimately lead to Plaintiff receiving

an uncollectable judgment or reaching a third, later settlement for even less money.  Given these

concerns, this negotiated settlement is preferred to costly litigation.

68.    While I do believe Plaintiff would ultimately prevail on establishing Defendants' liability, the trial and appeals process are uncertain, costly and lengthy.

69.    It is respectfully submitted that the Agreement represents a significant percentage of the recovery that Plaintiff would have achieved had he prevailed on all of their claims and survived an appeal.

### Attorneys' Fees and Reimbursement of Costs and Expenses

70.    SK has significant experience prosecuting wage and hour matter on behalf of individuals and classes, and that experience was directly responsible for bringing about the positive settlement and weighs in favor of approval of that portion of the Settlement Amounts which represent attorney's fees.

71.    As of December 18, 2017, SK had spent over 48.95 hours litigating and settling this litigation.  These hours were compiled from contemporaneous time records maintained by each attorney and paralegal participating in the case.  SK's contemporaneous time records are attached as **Exhibit D-2** ("Time Records").

72.    SK is a relatively small firm consisting of six attorneys, and four support staff members, including part-time staff.  As such, we have made every effort to use our resources wisely.  Accordingly, we have used billing judgment in compiling our contemporaneous time records and calculating our total lodestar.

73.    For instance, SK has excluded much of the time the other attorneys and I have spent performing administrative tasks, such as copying, scanning, or preparing envelopes for mailing, which could have been performed by support staff at a lesser hourly rate.  SK has also either eliminated or reduced time I spent that could have been accomplished by a paralegal, that

18

were not already excluded, this resulted in 1.65 hours less in the Billable Hours column in Exhibit D-2.

74.    SK has also excluded the time of Paralegals Madelyn Howarth and Carla Torres, and Law Clerk Samantha Kimmel, each of whom only recorded less than one hour of time entries.  This time totals 1.1 hours and is reflected in the Billable Hours column in Exhibit D-2.

75.    Lastly, SK has reduced by half the time that Troy Kessler and I spent communicating with each other about this case through December 2016 to account for duplicative efforts.  This time totals 0.6 hours and is reflected in the Billable Hours column in Exhibit D-2.  Likewise, since December 2016 Mr. Kessler's time spent communicating with me about the case has been excluded from the time records.

76.    As of December 18, 2017, SK's total lodestar, exclusive of costs, was $14,082.50. Attached as **Exhibit D-1** is a summary of the time spent by each attorney and paralegal as of December 18, 2017.

77.    As of December 18, 2017, SK had incurred costs in the amount of $584.90, of which Plaintiff's seek only nothing.  A summary of SK's costs are attached as **Exhibit D-3**.

78.    As of December 18, 2017, SK's total lodestar, inclusive of costs, was $14,667.40.

79.    In our experience, law firms in both the Eastern and Southern Districts of New York representing plaintiffs in wage and hour litigation typically charge their clients at least one-third of their gross recoveries when representing them on a contingent basis.

80.    Plaintiff's counsel's request for one-third of the net settlement for fees, $1,356.67, represents a mere 9% of the total lodestar, inclusive of costs.

81.    The requested attorneys' fees are not only based upon time and effort already expended but they are also meant to compensate SK for time that they will be required to spend

administrating the settlement in the future.  In particular, Defendants will be issuing Plaintiff five installment checks over 20 months, which SK will monitor.

82.     SK undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk.  Wage and hour cases of this type are, by their very nature, complicated and time-consuming.  SK frequently undertakes representation of large numbers of affected employees in wage and hour actions, which typically requires a tremendous investment of time, energy and resources.  This case was no exception.  Due also to the contingent nature our fee arrangement, SK was prepared to and did make a substantial investment of time and financial resources with the very real possibility of an unsuccessful outcome and no fee of any kind.

83.     Although much of SK's work is on a contingent or hybrid fee arrangement, SK has hourly clients.  For those clients, SK ordinarily and regularly bills clients at rates ranging from $400 to $475 per partner's hour, $350 to $375 per junior partner's hour and $225 to $325 per associate's hour, and $75 to $100 per hour for support staff.

84.     With regards to contingency fee cases, for purposes of the crosscheck, courts in the Southern and Eastern District have approved wage-and-hour settlements in which SK submitted lodestar calculations using rates similar to those included here.  *See, e.g.*, *Crosby v. Lasership, Inc.*, No. 15 Civ. 8694, ECF No. 171 (S.D.N.Y. June 30, 2017) (approving class action settlement and approving fees of SK); *Brackley v. Red Robin Gourmet Burgers, Inc.*, No. 16 Civ. 288, ECF No. 49 (E.D.N.Y. June 6, 2017) (same); *Cruz v. Burger Bros. Rest. Grp., Inc.*, No. 14. Civ. 3186, ECF No. 115 (E.D.N.Y. Mar. 19, 2017) (same); *Davis v. IMG Worldwide, LLC*, No. 15 Civ. 2157, ECF No. 78 (S.D.N.Y. Nov. 16, 2016) (same); *Batres v. Valente Landscaping, Inc.*, No. 14 Civ. 1434, ECF No. 53 (E.D.N.Y. Sept. 19, 2016) (Locke, Mag.);

*Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891, ECF No. 89 (E.D.N.Y. May 12, 2016) (same); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (same).[1]

85.    To date, Plaintiff's counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.

\*        \*        \*

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: Melville, New York
          December 20, 2017

/s/ *Garrett Kaske*
Garrett Kaske

**SHULMAN KESSLER LLP**
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, New York 11747
Telephone: (631) 499-9100

***Attorneys for Plaintiff***

---

[1]    *See* Attorneys' Fees & Costs Summary, *Crosby v. Lasership, Inc.*, No. 15 Civ. 8694, ECF No. 170-1 (S.D.N.Y. June 12, 2017) (calculating lodestar using the following rates for SK attorneys: $450 for partner, Troy Kessler, and $275 for associate, Garrett Kaske); Attorneys' Fees & Costs Summary, *Brackley v. Red Robin Gourmet Burgers, Inc.*, No. 16 Civ. 288, ECF No. 46-6 (E.D.N.Y. May 22, 2017) (same); Attorneys' Fees & Costs Summary, *Cruz v. Burger Bros. Rest. Grp. Inc.*, No. 14 Civ. 3186, ECF No. 111-8 (E.D.N.Y. Mar. 13, 2017) (same); Attorneys' Fees & Costs Summary, *Davis v. IMG Worldwide, LLC*, No. 15 Civ. 2157, ECF No 75-1 (S.D.N.Y. Nov. 1, 2016) (same); Attorneys' Fees & Costs Summary, *Batres v. Valente Landscaping, Inc.*, No. 14 Civ. 1434, ECF No. 48-1 (E.D.N.Y. July 12, 2016) (same); Summary of Attorneys' Fees, *Bijoux v. Amerigroup N.Y., LLC*, No. 14 Civ. 3891, ECF No. 87-2 (E.D.N.Y. Apr. 28, 2016) (calculating lodestar using the following rates: $450 for Troy Kessler and $300 for Garrett Kaske); Attorneys' Fees & Costs Summary, *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, ECF. No. 93-2 (E.D.N.Y. July 15, 2015) (calculating lodestar using the following rates: $450 for partner, Troy Kessler, and $250 for associate, Garrett Kaske).